UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,                    Case No. 06-CV-2812 (KMK)

        -v-                                                 <u>OPINION & ORDER</u>

EDWARD S. BROCCOLO,

                              Defendant.

<u>Appearances</u>:

Pierre G. Armand, Esq.
United States Attorney's Office
New York, New York
*Counsel for Plaintiff*

Ronald P. Hart, Esq.
New York, New York
*Counsel for Defendant*


KENNETH M. KARAS, District Judge:

        The Government alleges that Defendant Edward Broccolo ("Broccolo") prepared and

filed, on behalf of his clients, fraudulent tax returns for the years 2000 through 2003.  (Gov.'s

Mem. 6.)  On April 11, 2006, the Court issued a temporary restraining order ("TRO") enjoining

Broccolo from preparing tax returns.  (Doc. No. 2.)  The Government now seeks a preliminary

injunction prohibiting the same activity.  The Parties have agreed that the TRO will remain in

place until this preliminary injunction request is decided.  (Gov.'s Reply Mem. 1.)  For the

reasons stated on the record on November 8, 2006, and herein, the Court grants in part the

Government's request for a preliminary injunction.

I.  Background

Since at least 2000, Broccolo has operated a tax return preparation business under the name Financial Center of South Westchester ("FCSW").  (Gov.'s Mem. 1; Dixon Decl. ¶ 6.) From 2000 to 2003, Broccolo prepared over 1500 individual tax returns, using either his own name or that of FCSW.  (Dixon Decl. ¶ 7.)  The Internal Revenue Service ("IRS") began investigating Broccolo because an unusual number of the returns that he prepared contained claims for a tax credit known as the "Hope Credit."  The Hope Credit is an educational credit available to taxpayers for the first $1000 of qualified educational expenses paid to eligible post-secondary educational institutions.  (*Id.* ¶¶ 3, 10.)  The IRS investigation confirmed that Broccolo had regularly claimed this educational credit on behalf of clients who "had no eligible students in their households and incurred no qualifying post-secondary educational expenses."  (*Id.* ¶ 12.) Based on the number of individual returns that Broccolo prepared containing the Hope Credit and other allegedly false deductions, the Government estimates its loss to be approximately $4 million.  (*Id.* ¶ 18.)

As part of its investigation, the IRS "repeatedly requested that Defendant provide information . . . about his tax preparation business, including a list of all of his clients."  (*Id.* ¶ 11.)  According to the IRS, Broccolo ignored its written requests made repeatedly between January and August 2004, and refused to make himself available for an interview.  (*Id.*; Dixon Supplemental Decl. ¶¶ 3, 22; Gov.'s Reply Mem. 6-7.)  Broccolo claims that he does not recall ever refusing to speak with the IRS, and claims that to the extent that he failed to comply with

2

IRS requests, it was because his poor health prevented him from responding.[1]  (Broccolo Decl. ¶ 17.)  However, in an affidavit submitted with his opposition brief, Broccolo admitted to having prepared false tax returns.[2]

## II.  Discussion

### A.  Standard of Review

When an injunction is expressly authorized by statute, the standard preliminary injunction test is not applied.  *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975).  Instead, the Court must look to the "statutory conditions for injunctive relief," and may issue a preliminary injunction if those conditions are met.  *Id.* at 808; *see also SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 415 n.10 (S.D.N.Y. 2001) (noting that where a statutory remedy exists, the SEC "need not make the typical showing of likelihood of irreparable injury . . ."); *United States v. Schmitt*, 734 F. Supp. 1035, 1049 (E.D.N.Y. 1990) ("[I]rreparable harm is presumed when the Government seeks a preliminary injunction pursuant to a statute which expressly authorizes entry of an injunction upon a showing of violation of law by the Government.").

Here, the Government seeks a preliminary injunction under sections 7402(a), 7407, and 7408 of the Internal Revenue Code.  *See* I.R.C. §§ 7402(a), 7407, 7408.  Sections 7407 and 7408 contain express provisions authorizing district courts to enter injunctions upon the showing of a

---

[1]As detailed in his affidavit, Broccolo suffers from a number of serious medical ailments. At 460 pounds, he is morbidly obese.  He also suffers from "high blood pressure, borderline diabetes, and arthritis" and he has wounds on his legs which will not heal "because of a worsening 'lipedema' condition."  (Broccolo Decl. ¶ 16.)  In 2003 and 2004 he underwent several intensive operations (*id.* ¶ 18), and during the status conference held on October 26, 2006, his attorneys represented that he was hospitalized.

[2]Neither Party requested a factual hearing, either in the submissions or at oral argument. Thus, the Court conducted no such hearing.

violation of the law.  Accordingly, if the Government establishes a violation of either of these sections, the Court may issue a preliminary injunction.  Section 7402(a) authorizes injunctive relief, but does not provide "statutory conditions."  *Mgmt. Dynamics*, 515 F.2d at 807-08. Therefore, as discussed below, the traditional equitable considerations must be applied.

B.  Internal Revenue Code § 7407

1.  Broccolo's Misconduct

Internal Revenue Code § 7407, which applies only to income tax return preparers, permits a court to enjoin a defendant's offending conduct if the defendant has:

(A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,

(B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as an income tax return preparer,

(C) guaranteed the payment of any tax refund or the allowance of any tax credit, or

(D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue Laws.

I.R.C. § 7407(b)(1).  If the preparer has engaged in such conduct "continually and repeatedly," and if "an injunction prohibiting such [specific] conduct would not be sufficient," the Court may issue a broader injunction prohibiting the defendant from "acting as an income tax return preparer" altogether.  *Id.* § 7407(2).

Here, it is uncontested that Broccolo is an income tax return preparer.  (Dixon Decl. ¶ 7; Broccolo Decl. ¶ 1.)  The provisions of section 7407 therefore apply to him.  *See* I.R.C. § 7407(a).  At issue, then, is whether Broccolo engaged in one of the enumerated prohibited

activities, and if so, what form of injunction should issue.  The Government argues most forcefully that Broccolo has violated section 7407(b)(1)(A), which permits an injunction when a defendant "engages in conduct subject to penalty under section 6694 or 6695" of the Internal Revenue Code.[3]  (Gov.'s Mem. 11-14.)

Looking first at section 6694, Broccolo is subject to penalty if he knowingly prepared a tax return that understated a client's tax liability based on an undisclosed, meritless position.  *See* I.R.C. § 6694(a)(1)-(3).  Here, Broccolo admits to preparing returns which understated his clients' liabilities by falsely claiming that his clients qualified for the Hope Credit (Broccolo Decl. ¶ 4-7), and both the IRS investigation and the declarations of two former clients confirm Broccolo's admission.  (Dixon Decl. ¶¶ 10-15; Da Silva Decl. ¶¶ 3-6; Gouvea Decl. ¶¶ 4-6.)  The Government has also sufficiently established that Broccolo knew, or at least should have known, that the returns he prepared contained false tax credits.  Indeed, the investigation thus far reveals that this was not an isolated incident, as Broccolo engaged in a pattern of submitting false returns over the course of several years.  (Dixon Decl. ¶¶ 12-14.)  In fact, as the Government notes, Broccolo typically did not submit documents with the returns.  This suggests that his conduct was intentional, and not the result confusion or a mistaken belief that the Hope Credit applied.  (*Id.* ¶ 10; Gov.'s Mem. 12.)  Broccolo appears to concede this point, as nowhere in his affidavit or opposition brief does Broccolo contest that he had knowledge that the returns he prepared contained false tax credits.

---

[3]The Government also briefly argues that Broccolo violated subsections (b)(1)(B) and (C) of this section, citing evidence that Broccolo illegally guaranteed refunds (Da Silva Decl. ¶ 3) and misrepresented his qualifications as a tax preparer by falsely holding himself out as a certified public accountant.  (Dixon Decl. ¶ 8.)  Broccolo does not contest these points and they therefore form independent bases for a preliminary finding of a violation of section 7407.

There is also strong evidence indicating that Broccolo violated section 6695(d) of the Internal Revenue Code.  That section is triggered when a tax return preparer fails upon request to turn over the names and taxpayer identification numbers of the individuals for whom he has prepared tax returns.  *See* I.R.C. § 6695(d) (referencing I.R.C. § 6107(b)).  The Government avers that Broccolo refused repeated requests for such information about his tax preparation business.  (Dixon Decl. ¶ 11; Gov.'s Mem. 13-14.)  Broccolo does not dispute that he has not yet produced the requested information, but he attributes his failure to respond to his poor health.  (Broccolo Decl. ¶ 17.)  This is not convincing, as the Government has apparently made multiple requests over an extended period of time, including, as represented during the status conference held on October 26, 2006, requests to Broccolo's former and current attorneys.

### 2.  Propriety of Injunctive Relief

Because the Court concludes that Broccolo's conduct violated the provisions of section 7407, the Court must next determine whether "injunctive relief is appropriate to prevent the recurrence of such conduct."  I.R.C. § 7407(b)(2); *see also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated.").  "The Second Circuit has articulated several factors to be considered in assessing the probability of future infractions:  (1) the degree of scienter involved, (2) the isolated or recurring nature of the fraudulent activity, (3) the defendant's appreciation of his wrongdoing, and (4) the defendant's opportunities to commit future violations."  *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 867 (S.D.N.Y. 1997) (citing *SEC v. Commonwealth Chem. Secs.*, 574 F.2d 90, 100 (2d Cir. 1978)); *see also United States v. Schiff*,

6

379 F.3d 621, 626 (9th Cir. 2004) (noting that other factors to consider include "the gravity of

the harm caused by the offense . . . [and] the extent of the defendant's participation").  The Court

must also "assess all those considerations of fairness that have been the traditional concern of

equity courts."  *Manor Nursing*, 458 F.2d at 1102.

Here, all but one of the enumerated factors strongly support injunctive relief.  As

discussed above, there is scienter:  The facts support a finding that Broccolo knew that his

conduct was illegal and Broccolo has admitted as much.  (*See* Broccolo Decl. ¶ 5 ("This is not

the type of case where I can point to any subjective good faith in reliance on the state of the . . .

Internal Revenue Code as I perceived when I prepare [sic] the tax returns.").)  Moreover,

Broccolo's refusal to cooperate with the IRS's requests for information further evidences his

knowledge of his offense.  The conduct was also "recurring in nature."  Although Broccolo's

refusal to cooperate has prevented the IRS from fully gauging the extent of his alleged illegal

conduct, there is compelling evidence that he prepared fraudulent tax returns over the course of

at least four tax years and for numerous clients.  (*Id.* (noting the long duration of his "scheme");

Dixon Decl. ¶¶ 12-16; Gouvea Decl. ¶¶ 3-6; Da Silva Decl. ¶¶ 3-6.)  Additionally, if the Court

does not issue an injunction, Broccolo will have considerable opportunity to commit future

violations.  Broccolo has stated his desire to return to his tax preparation business (Broccolo

Decl. ¶ 11), and thus absent an injunction, there is nothing to prevent Broccolo from again

preparing improper tax returns.

Broccolo has, however, attempted to acknowledge his wrongdoing and made noises

sounding in remorse for his actions.  (*Id.* ¶¶ 2, 4-15.)  He has professed appreciation for the

gravity of his offense (*id.* ¶ 5) and has displayed – in words if not in actions – his willingness to

"cooperat[e] in any future [SEC] investigations." (*Id.* ¶ 14.)  However, several paragraphs in Broccolo's affidavit appear to make excuses for his behavior.  (*See, e.g. id.,* ¶¶ 17, 20.)  For example, Broccolo claims that he prepared Da Silva's tax return with the fraudulent Hope Credit only pursuant to Da Silva's request.  (*Id.* ¶ 20.)  Yet, this claim is contradicted by common sense, as the available evidence suggests that Da Silva had difficulties with the English language, let alone the Tax Code.  And this claim is further contradicted by the affidavit from Suzeli Gouvea, another former client of Broccolo, who has sworn that the Broccolo claimed the Hope Credit on her behalf as well.  (Gouvea Decl. ¶ 4.)

That said, the Court is willing to consider, as a "traditional concern of equity courts," the impact of an injunction on Broccolo's business and person.  *Manor Nursing*, 458 F.2d at 1102. Broccolo contends that due to his obesity and deteriorating physical condition, he is only able to perform "desk jobs."  (Broccolo Decl. ¶ 22.)  A broad injunction would therefore be a "death sentence," he argues, as he would be unable to pay for his medical care without the income from his tax preparation business.  (*Id.* ¶ 25.)  However well-founded this claim, Broccolo's concern is less persuasive in the preliminary inunction context.  Thus, given Broccolo's history of repeatedly preparing fraudulent tax returns and his chronic refusal to cooperate with the IRS, the Court finds that some preliminary injunction is appropriate.

### 3.  Breadth of Injunctive Relief

The Court will next consider the extent of the preliminary injunction, pursuant to Internal Revenue Code section 7407.  The statute identifies two options:  The Court may enjoin Broccolo only from engaging in the specific unlawful behavior that he is alleged to have commited; or the Court may enjoin Broccolo more generally from performing any services at all as an income tax

return preparer.  *See* I.R.C. § 7407(b)(2) ("[T]he court may enjoin such person for further engaging in such conduct.  [Or] if . . . an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as an income tax preparer.").  Again, in deciding the breadth of the injunction the Court should "assess all those considerations of fairness that have been the traditional concern of equity courts."  *Manor Nursing*, 458 F.2d at 1102.

Broccolo argues that, if the Court chooses to enjoin him from preparing income tax returns, the injunction should only extend to individual income tax returns, but should not prohibit him from preparing corporate tax returns.  According to Broccolo, corporate tax returns make up only approximately twenty-five percent of his business.  Broccolo contends that he has never prepared fraudulent tax returns for his corporate clients, and, indeed, the Government makes no allegations of wrongdoing with respect to corporate tax returns.  In response, the Government argues that there is no evidence either way regarding Broccolo's corporate tax returns because he has consistently refused to cooperate with the Government's investigation.

As the Government points out (Gov.'s Mem. 4-5), under similar facts, courts applying section 7407 in other jurisdictions have issued preliminary injunctions barring defendants from preparing tax returns.  *See, e.g., United States v. Stone*, No. 06 Civ. 157, 2006 WL 2265436, at *3 (W.D. Mich. Aug. 7, 2006) (issuing a preliminary injunction barring defendants from preparing tax returns because of "the volume of the returns generated [more than 1700 per year] and the potentially large amount of understated tax liability"); *United States v. Adams*, 445 F. Supp. 2d 586, 591-92 (W.D.N.C. 2006) (issuing preliminary injunction during non-tax season where defendant "knowingly participated in conduct which caused on a recurrent and continual

basis the inflation of tax refunds due to tax payers"); *United States v. Bailey*, 789 F. Supp. 788, 816-19 (N.D. Tex. 1992) (issuing a permanent injunction where the defendant tax preparers had prepared over 9000 returns in four years, had acted with scienter, and had steadfastly denied their culpability).

However, unlike Broccolo, in the large majority of cases where a district court broadly enjoined a defendant from preparing tax returns, the defendant denied any culpability. *See, e.g.*, *Stone*, 2006 WL 2265436, at *3 (defendants contested guilt by submitting evidence "impugn[ing] Plaintiff's affiants"); *Adams*, 445 F. Supp. 2d at 591-92 (defendant accused the IRS of fabricating evidence against him); *United States v. Paul*, No. C04-0916L, 2004 WL 3250168, at *3 (W.D. Wash. Sept. 17, 2004) ("Defendant has not recognized any personal culpability."); *Bailey*, 789 F. Supp. at 818 ("Defendants steadfastly deny that they have willfully understated their clients' tax liabilities."). Moreover, the burden that an injunction would impose on Broccolo must be taken into account, including any effects that an injunction would have on Broccolo's health. *See Manor Nursing*, 458 F.2d at 1102 ("[T]he adverse effect of an injunction on defendants is a factor to be considered by the district court in exercising its discretion.").

Applying these considerations, including the gravity and duration of the offense, as well as the clear scienter and the ample opportunities for future violations, Broccolo's health concerns, and what can charitably be described as qualified expressions of remorse, are insufficient to avoid a preliminary injunction prohibiting him from serving as an income tax preparer for individual returns during the pendency of this litigation. The factors considered by the Court ultimately aim at determining the probability that Broccolo will again prepare fraudulent returns. *See Softpoint*, 958 F. Supp. at 867 ("The Second Circuit has articulated

several factors to be considered in assessing the probability of future infractions.").  Here, the persuasive evidence of Broccolo's repeated fraudulent and obstructive conduct is more than sufficient to conclude that anything short of this broad injunctive relief will be insufficient to prevent future misconduct.  *See Manor Nursing*, 458 F.2d at 1100 (noting that past fraudulent conduct, particularly where offenders "did not attempt to cease or undo the effects of their unlawful activity until the institution of an investigation," supports injunctive relief).

However, at this stage in the litigation, the Court will permit Broccolo to continue to prepare tax returns for his corporate clients.  The Government has been investigating Broccolo's tax return business since at least January 2004 (Supplemental Dixon Decl. ¶ 3), and despite Broccolo's recalcitrance, the Government has uncovered ample evidence of wrongdoing with respect to Broccolo's preparation only of *individual* income tax returns.  Given the Government's long-running investigation and given the strong evidence of fraudulent individual returns, the lack of evidence that Broccolo has prepared fraudulent *corporate* returns supports Broccolo's claims that no such fraudulent returns were prepared.  Moreover, Broccolo has denied preparing fraudulent corporate returns, even while admitting to preparing fraudulent individual returns.  Accordingly, the Court will permit Broccolo to continue to prepare corporate tax returns until such time as the Court rules on the Government's request for a permanent injunction.

However, Broccolo may continue his corporate tax return work only on the following conditions.  First, until further notice of the Court, Broccolo must submit a sworn affidavit on the last day of every month identifying any and all corporate tax returns he prepares, assists in preparing, or advises another in preparing.  Second, Broccolo must list in this monthly affidavit all clients for whom he did any corporate tax work and the fees that they paid him.  Third,

11

Broccolo must attach copies of any and all corporate tax returns to the monthly affidavit.  The affidavit and the accompanying information are to be submitted to an IRS official designated by the Government.  Fourth, Broccolo must cooperate, consistent with his constitutional rights, with the Government's investigation.  The Court is willing to allow Broccolo to continue corporate tax return work only because of his dire health circumstances and only under the conditions and limitations described herein.  Moreover, by providing information regarding his corporate tax work directly to the Government, the Court believes the burden on the Government's investigators will be minimal.

### C.  Internal Revenue Code §§ 7408 and 7402(a)

The Government also seeks a preliminary injunction under sections 7408 and 7402(a) of the Internal Revenue Code.  Violation of section 7408 is established by the same uncontested facts discussed above in connection with section 7407.[4]  The remedy under section 7408, however, is limited to injunctions prohibiting only those acts that are illegal under the Internal Revenue Code.  I.R.C. § 7408(b) ("[T]he court may enjoin such person from engaging in such conduct or in any other activity *subject to penalty under this title*." (emphasis added)).  Accordingly, the Court cannot enjoin Broccolo from engaging in non-fraudulent tax preparation work pursuant to this section of the Internal Revenue Code.

Section 7402(a) is a catch-all provision which permits the "district courts of the United States . . . to make and issue in civil actions, writs and orders of injunction . . . and to render such

---

[4]Section 7408 authorizes injunctive relief when a defendant has violated any of several enumerated sections of the I.R.C.  Here, by knowingly preparing fraudulent tax returns, Broccolo has violated sections 6700 and 6701.  *See* I.R.C. §§ 6700-6701 (prohibiting the promotion of "abusive tax shelters" and "aiding and abetting understatement of tax liability").

judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." I.R.C. § 7402(a). There is no Second Circuit authority regarding section 7402(a), but courts in other jurisdictions have applied traditional equity considerations when crafting injunctive relief pursuant to this section. *See United States v. Ernst & Whinney*, 735 F.2d 1296, 1301 (11th Cir. 1984). In the Second Circuit, this means that a movant seeking a preliminary injunction must show "that it is likely to suffer irreparable injury if the injunction is not granted and (1) either a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (citations and internal quotations omitted); *accord Castlewood, Inc. v. Nat'l Indem. Co.*, No. 06 Civ. 6842, 2006 WL 3026039, at *4 (S.D.N.Y. October 24, 2006).

Here, likelihood of success on the merits is clearly established. The Government has submitted ample evidence of Broccolo's illegal conduct and Broccolo does not dispute that he repeatedly prepared fraudulent tax returns for some of his clients. The Government also clearly stands to suffer irreparable harm if Broccolo is permitted to continue engaging in this behavior. The IRS would have to expend significant resources to identify and pursue "future returns with frivolous claims." (Gov.'s Mem. 20.) And if Broccolo committed future infractions, it is unlikely that the Government would be able to recover one hundred percent of any erroneously issued refunds. (*Id.*)

Accordingly, the Court has authority to issue a preliminary injunction pursuant to sections 7408 and 7402(a) of the Internal Revenue Code. Section 7408, however, only authorizes enjoining those acts expressly prohibited in the Internal Revenue Code. Section 7402(a), in

contrast, has no such express limitation, and applied broadly can support an injunction prohibiting Broccolo from preparing even legitimate income tax returns.  In deciding the breadth of an injunction pursuant to section 7402(a), the Court again has considered the equitable considerations discussed above.  Thus, the injunction described above is also ordered under section 7402(a).

### III.  Conclusion

For the reasons stated on the record on November 8, 2006, and herein, the Court grants

the Government's request for a preliminary injunction barring Broccolo from preparing

individual tax returns.  However, Broccolo will be permitted to prepare corporate tax returns,

under the following conditions:

- Until further order of the Court, Broccolo must submit a sworn affidavit on the last day of every month identifying any and all corporate tax returns that he prepares, assists in preparing, or advises another in preparing.  The affidavit and all accompanying information is to be submitted to an IRS official designated by the Government.

- The affidavit must be accompanied by a list of all clients for whom Broccolo did any corporate tax filing work and the fees that they paid him.

- The affidavit must further be accompanied by copies of any and all corporate tax returns identified in the affidavit.

- Broccolo is to cooperate, consistent with his constitutional rights, with the Government's investigation.

SO ORDERED.

Dated:          December 13, 2006
                New York, New York

                                                KENNETH M. KARAS
                                                UNITED STATES DISTRICT JUDGE

15